May it please the Court, Chris Bartolomucci for Appellant 8x8. The government collected billions of dollars in unlawful telephone excise tax. And you're successful in your appeal and received the requested excise tax refund. Are you going to refund that tax money to your customers? I don't think so, Your Honor. There's nothing in the record that indicates what 8x8 plans to do with the refund if it collects it, so I think the Court can assume that it intends just to keep it. Treat it as a windfall. Not as a windfall. It paid the tax. That's not true. It did pay the tax. It did not pay the tax. It collected the tax from its customers, and it transmitted it to the government. Isn't that what your CFO said in the deposition? And the customers, you admit, have received the refund. Respectfully, Your Honors, the special tax rules here made 8x8— I don't care about your argument about how the statute reads and whether it would have made you liable. The facts of the case are you build your customers for this tax, you collected it from them, and then you transmitted it to the IRS. Are you disputing that? I am disputing that. Isn't that contrary to the deposition testimony? No, I don't think so. It is true that 8x8— I thought he said that 8x8 collected the excise tax and remitted it. Well, he didn't say that? I don't know. Well, why don't you look at it? It's in the appendix at page 389, pages 138 and 139 of the transcript. I think you are pushing the edge here with this argument. Well, I have to disagree, Your Honor. Now, we admit that 8x8 passed on the cost of the tax to its customers. Read this. It says, so prior to—and I take it in June of—prior to June of 2006, what was the company's policy with regard to the tax? Prior to 2006, we collected it and remitted it. You didn't pass it on. You collected it from your customers, and you remitted it. Well, I don't think he meant that in the legal sense of being a tax— Okay, so he was under oath, but as the CFO, you are saying he made a mistake, right? He said it. You have to admit he said it. We have it right in here in the record. He said those words.  But the fact is that— But you're saying he didn't mean it. I don't think he meant that as a legal matter, 8x8 was acting as a tax collector, and therefore it was not the part of the— What about your 10-K form, you know, your SEC 10-K form, where you said, you know, it's the customers that are paying the excise tax? The customers paid the burden of the excise tax. We don't disagree with that. But the statutes, and if you look at the regulations— But you want the benefit. Excuse me? But your client wants the benefit. The client paid the tax, and therefore it wants the refund. There's nothing unusual about passing on the burden of a tax to a customer. So you want the government to pay the refund to the customers, which you admit it's done, and to your client. Well, no. What the stipulation says is that a majority of 8x8 customers probably got a refund. Now, under the government's program, you could check a safe harbor box and without any other explanation get a refund. Just curious. That's probably what that refers to. Just curious. How did the end users end up getting the refund? How did that process work? Well, I'm drawing this from the Cohen decision, but there was a procedure whereby taxpayers could just check a box and get a safe harbor amount as a refund from toll telephone service. And I suspect what that stipulation is referring to, but it doesn't explain that. But our argument would be that whether or not some customers got a refund, they weren't the ones who were entitled to it. The 2007 notice makes perfectly clear that the holder— You called your customers they were paying taxes. Did you not? We listed the taxed amounts based on our understanding of what California law required 8x8 to do. But then what about the terms and conditions of the contract you had with your customers? You had a contract with them. You had this ongoing business relationship with them through the contract, terms and conditions saying specifically the excise taxes shall be paid by end user. Well, there's nothing in— You know, the price for the services do not include the excise taxes. There's nothing in the regulations to the extent you're asking about the continuing business relationship. No, no, I'm asking about your terms and conditions where you are telling your customers that they are the ones paying the excise taxes. 8x8 was being very transparent about how they were getting billed. Like there's a tax on these amounts. This is what it is. But as a legal matter, those taxes were the burden of 8x8. They were the ones that had to pay it. So why didn't you tell your clients they didn't have to pay that money to you? Well, because we were charging them for the cost of the tax. We're not disputing that. But that's no different than— But if you were paying these taxes, as you say you were, you would have been paying them to the carrier you purchased these services from. But you filed an exemption for them, so you didn't have to pay them. That's right. No, the exemption meant that the carrier didn't have to collect the tax from us. But we were still liable for it, whether or not they collected it. So we paid the tax ourselves. How do you deal with the fact that in the regulation it says those exemptions specifically do not apply to a transfer of a PTC from a carrier to a transferee reseller? Well, I would point to either you were not following the law then by filing the exemption certificate and not paying the taxes to the carrier, or now you're seeking a refund you're not entitled to. No, we were following the law. Section 4253F says that the carrier doesn't have to collect tax if the service is being transferred to a telephone or telegraph company, and we were relying upon that part of 4253. But now you're relying on the notion that you're a transferee reseller to get a refund. Well, that's right. But it specifically says in the regulation that if you were a transferee reseller, you don't get the exemption. You can't change your legal theory on whether or not you were liable for taxes then versus now just to get a refund. I don't think that's a correct reading of the regulation, Your Honor. Well, look at D3. Well, I'm looking at D2. Well, I'm not looking at D2. I'm looking at the exemption portion that says Section 4253 does not apply to the transfer of a PTC from a carrier to a transferee reseller. So if you considered yourself a transferee reseller, you could not have filed the exemption form. Well, be that as it may, 8 by 8 remained liable for the tax. The only issue under 4253 is whether the carrier had to collect it from us. We remained liable for it either way. And if you look at the regulation, it says— You mean if you legitimately file an exemption form, you're still liable for the tax? We're still liable for the tax. It's just that the carrier doesn't have to collect it from us. That's what 2.2 says, or 2.1 and 2, that if the carrier gets the notice, and as long as they don't have any reason to believe it's wrong, they don't have to collect the tax. But that doesn't mean that we don't have to pay the tax. We still do. But 2.2 applies to carriers. It doesn't apply to transferee sellers. Well, 2.2 applies to a purchaser. In this sense, at this point, we were the purchaser of the service from the carriers, and 2 says— It applies to purchasers that are carriers, not purchasers that are transferee resellers. Well, I think that's got to mean—the statute refers to carriers and other entities like telephone and telegraph companies, and I think that's got to be shorthand for all the entities that are listed in the regulation. But not transferee resellers. Well, I think it does include transferee resellers. I don't know how you get around their language in D3. Well, it says the purchaser remains liable for the tax imposed. So the liability stayed with 8x8. The 2007 notice is very plain that the holder is not liable for the tax. In this case, the carrier didn't have to collect it. So the only entity that could possibly have been liable for the tax is 8x8, the transferee. And that's also explicit with what the 2007 regulation says, which is that the transferee is the person liable for the tax paid on the PTC, and thus it's the person that can request the credit. I'm interested in your client's relationship with its customers. If they didn't pay that 3%, would you still provide them with service? Well, they had to pay up front, so they had to pay the amount that they were billed. And when they did that, they got the service. If they paid something less, they wouldn't get the service. Am I answering the question you were driving at? Sure, they paid the excise tax. It was billed to them, and they paid it. They paid the equivalent of the tax. They didn't pay the tax itself. So what you were doing— Wait a minute, wait a minute. You're looking at me funny. Counsel, counsel, you don't talk when a judge talks. Do you understand that? Yes, sir. Okay. Now, what you were doing is you were collecting 3%, and you were telling your customers that that was tax money. Is that not correct? We told them, yes, what the tax was, and based on our understanding of what the California law requires. It said on the bill, tax, 3%. Tax. Now, we weren't saying you are paying the tax. We're explaining why we were billing them what we were billing them, and that's because we were liable for the tax. I'm sorry. Are you really saying if I get a bill from a telephone company that has an amount for a service and an amount for a 3% excise tax, and I have to pay both of those, that I'm not really paying the tax? Well, not in this case. In this case, yes, we passed on the cost of the tax to our customers. Just out of vital curiosity, the rest of the bill, were they not really paying that either? No, they are paying that, Your Honor. But it's hardly unusual for a business entity to be taxed and then pass on the cost of that tax to their customer. It's no different than if there had been a property tax hike and then the restaurant raises their prices. No, it's completely different because when I get a menu, I don't get a menu that says the price of my crab is $30 plus here's an extra amount for the property tax. That's different when you include it into a long-sum price. I agree. If all you did was pass on and say, here, you pay $30 for these services and don't break out the excise tax, you might have some good faith argument. You didn't include it altogether. You broke out the excise tax. Well, all I can tell you, Your Honor, is that APEI was trying to be transparent about why the customers were being billed what they were billed. And part of what they were being billed was a cost equal to the amount of the tax imposed. Equal to? Exactly. And the fact is that the customers are legally entitled to a tax refund, and that can only be if they were tax payers. Is that not correct? Well, I'd say the customers are not entitled to a refund if this was a PTC arrangement. Then only 8 by 8 is liable. So your position is they illegally collected those refunds that you admit they received? Well, we're putting it out of the way that the IRS was mistaken in issuing refunds to any customers who took that. And you took that position before the IRS initially? I believe that's right, Your Honor. I believe that's been our consistent position. You opposed repayment to your customers? Well, the customers would have sought a refund separately. We wouldn't even know about it. That's why the stipulation is so vague, because any refund request would occur entirely separate of us. If I could reserve the balance of my time for a moment. Governor has something to say? Good morning. May it please the Court. Our position is simple, 8 by 8. I find these tax regulations very difficult to read. But can you give me your reading of D3, the exemption language, and whether it applies to transferee resellers? This is on page 20A of the addendum to Petitioner's Brief. Well, it's in the regulations. Oh, I'm sorry. I was looking at that. D3. It's the exemption language about whether or not a transfer reseller can file that. I think it clearly says section 4253, which is the exemption, does not apply to the transfer of a PTC from a carrier to a transferee reseller. So if they had, in fact, been a transferee reseller, they would not have been able to swear honestly in the exemption certificate to their carrier suppliers that they were exempt. And if they had actually been a transferee reseller, they would not have filed this exemption and instead would have paid the taxes directly to the carrier. That's correct. That's how the regulation works. The points that I wanted to make, frankly, were made by the court during the questioning. If there's anything that I can explain from our brief. Do you think there's a good faith basis for this argument being made by your friend? No, I don't. Well, they have an argument that what they're doing is a similar arrangement to a PTC, or at least PTC is defined so broadly as to encompass arrangements that might be something like what 8x8 is doing. And we've set out in our brief five alternative reasons why we think this arrangement is not similar to a PTC arrangement. But regardless of whether they were selling PTCs or even whether they were transferee resellers of PTCs, they told their subscribers, this is on page 260 of the Joint Appendix and Subscription Agreement, you owe the tax unless you can give us an exemption certificate and then separately charge them for the tax. They've conceded in this case they didn't bear the economic burden. They've conceded that they didn't repay their subscribers or obtain their consent. So they haven't complied with 6415A. And under binding precedent from this court, for example, the Gumtur decision, they're not entitled to a refund. Unless the court has any further questions, the government rest on its feet. Thank you, counsel. Welcome back. I've been puzzling over the regulation D3 provision. And I would say that if you think that we were in violation of that provision, the only effect of that is that instead of the carrier collecting the tax from 8x8, 8x8 was itself responsible for paying the tax, which it did. So either way, 8x8 was responsible for the tax and it paid the tax. So I think with respect, I think that's a red herring issue in this case. The D2 provision – You didn't pay the tax with your own money. You didn't pay the tax with your own money. You paid the tax with your customers' money. So if you want to take advantage of it, you owe the IRS a lot of money and you need to refund your customers a lot of money. Well, of course, the customers paid their bill and it was from that pool of money that 8x8 paid the tax. But the tax burden under the notice and the statute was aimed squarely at 8x8. The transferee is the entity responsible – You certainly didn't think that at the time. I'm sorry? You certainly didn't think that at the time because you filed the exemption certificate saying you weren't liable for the tax. Well, the exemption, again, was on the basis that 8x8 was a telephone or telegraph company. That was its good faith position and – Which makes it responsible for collecting the tax from its customers. Well, it makes it – Which is what your CFO testified to. No, it makes it liable for the tax and, again, it paid the tax. It doesn't. It makes you responsible for collecting it from your customers who are liable for the tax if you think you're some kind of service provider or carrier. Well, if this was a PTC arrangement, the 2007 notice is personally clear – If this was a PTC arrangement, you couldn't have filed the exemption. Well, again, if that was a mistake, that just means that the carrier should have collected the tax from us. It wasn't a mistake. Clearly, you believed you were not required to pay the tax. Now, when you see the opportunity of a windfall, you're changing your legal theory of what you were liable for. I disagree that it's a windfall, Your Honor. It was the government that collected $4 billion that it hasn't refunded. So I think that the equities here are not that simple.  Thank you, Your Honor.